UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VIVIAN LEANN GRAVES                                    CIVIL ACTION

VERSUS                                                          NO. 09-5633

MICHAEL J. ASTRUE, COMMISSIONER             SECTION "A" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Vivian Leann Graves, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Act. 42 U.S.C. §§ 405(g), 423, 1381a. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

Graves filed applications for DIB and SSI on February 22, 2007, alleging disability since January 1, 2006, due to Crohn's disease, osteoporosis and scoliosis. (Tr. 58, 61, 91). After her applications were denied, she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 10, 2008. (Tr. 23-39). On September 30, 2008, the ALJ issued a decision denying plaintiff's applications. (Tr. 13-22). After the Appeals Council denied review on June 8, 2009, the ALJ's decision

became the final decision of the Commissioner for purposes of this court's review.

(Tr. 1-3).

I.    STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.    The ALJ erred by rejecting plaintiff's eligibility for benefits because of her noncompliance with medical treatment without demonstrating that compliance is clearly expected to restore capacity to engage in substantial gainful activity, in violation of Social Security Ruling 82-59.

B.    The ALJ erred by rejecting plaintiff's eligibility for benefits because of her noncompliance with medical treatment without first warning her that continued failure to follow prescribed treatment without good reason could result in denial of benefits, in violation of Social Security Ruling 82-59.

II.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.    Graves met the disability insured status requirements of the Act through June 30, 2007 and must establish disability on or before that date to be entitled to a period of disability and DIB.

2.    She has severe impairments consisting of Crohn's disease and possible osteoporosis secondary to oral steroid use, but with adequate mineralization of skeletal structures seen on repeated x-rays.

3.    Although possible osteoporosis is included among plaintiff's severe impairments, none of the objective medical records support that diagnosis and the balance of the evidence fails to support any chronic or severe symptoms related to the diagnosis.

4.    Considering the lack of objective medical evidence to support plaintiff's subjective allegations of back pain or osteoporosis, the ALJ disregarded the

opinion of her treating physician concerning her alleged extreme functional limitations secondary to pain.

5. Graves requires medication to manage the symptoms of her Crohn's disease. The effectiveness of her medication regime cannot be determined from the record because she has repeatedly admitted to medication noncompliance.

6. Finding that most of the exacerbations of plaintiff's Crohn's disease occurred during admitted periods of medication noncompliance, the ALJ disregarded the opinion of her treating physician concerning the frequency and severity of her symptoms from that disease.

7. Because the medical evidence strongly supports that most, if not all, of plaintiff's Crohn's disease exacerbations occurred during periods of medication noncompliance, it can be presumed that her symptoms of Crohn's disease were being adequately controlled during periods of medication compliance.

8. The claimant's assertions relative to symptomatology, pain, functional limitations and restrictions on activities of daily living are not credible in that they are exaggerated, lack corroboration or substantiation in the medical evidence, and are at least partially the result of her failure to follow prescribed medical treatment. 20 C.F.R. §§ 404.1529, 416.299; Social Security Ruling 96-7p.

9. Graves has the residual functional capacity to perform the full range of medium work.

10. She can perform her past relevant work as a fast food restaurant cashier and a babysitter.

(Tr. 15-17, 20-21).

III.    ANALYSIS

A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."  Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether

4

substantial evidence supports it.  Perez, 415 F.3d at 461.  Any findings of fact by the

Commissioner that are supported by substantial evidence are conclusive.  Id.; Newton,

209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that

she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations

that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§

404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2008).  The regulations

include a five-step evaluation process for determining whether an impairment prevents

a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920;

Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2]  The five-step

---

[1]The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

[2]The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions

---

of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez, 64 F.3d at 174.

B.    Factual Background

Graves testified that she was born in 1984, finished the eighth grade at age 16 and did not return to high school. She stated that her alleged disability onset date of January 1, 2006 was suggested by someone at the Social Security office because she had filed a tax return for the previous year as a result of her babysitting job. She said Dr. Albert Tydings is her obstetrician and that she last saw him in February 2007 for a six-week checkup following the birth of her second child. (Tr. 30).

Plaintiff stated that she has had Crohn's disease since she was 16 years old. She said it was diagnosed after she kept getting sick, with diagnoses of kidney infections and viruses, and lost 20 percent of her body weight while living in Texas with her father. She said Crohn's disease was diagnosed by colonoscopy in November 2000 when she came back to Louisiana to live with her mother.

Graves testified that her symptoms are nausea, vomiting, frequently going to the bathroom, loss of appetite, chronic stomach pain and cramps. She said she never has a normal stool, but always has soft ones. She testified that she has nausea every day and that it gets worse sometimes two or three times a week. (Tr. 31-32).

Graves said that, during a bad period, she goes to the bathroom eight or more times a day, vomits and has severe stomach pains. She stated that she has to stay "right on top of" a bathroom during those times. She testified that she tried to work at a Hardee's restaurant when she was 17 years old, but she was hospitalized for three days after she started working and did not go back. She said she tried working at a McDonald's restaurant in 2005, but she only worked five days before she was hospitalized in Bogalusa by her treating physician, Dr. Yerneni. She stated that she had last tried working at a Waffle House restaurant, but that she went to an emergency room after her first day of training and had to quit the job. (Tr. 32-33).

Plaintiff testified that she had worked as a babysitter for her sister and her cousin for two years. She said most of that work was done in her mother's home and that everyone in her family lives on the same street, so that if she needed help, her mother, her grandmother and two aunts were nearby.

Graves stated that she had problems in school and did not attend past the eighth grade. (Tr. 33). She said that she can read "somewhat" and that she had been told she was dyslexic when she was tested at age 11 while living in Texas.

Plaintiff testified that she started using drugs in February 2006 when she met her youngest son's father and that she continued to use drugs until August 2006, when she left the man and moved in with her mother. She stated that she smoked a marijuana joint

laced with "crystal meth" in December 2006, when a relative gave her the joint. She said she used crystal meth from February to August and that smoking the marijuana and crystal meth cigarette in December caused her to go into early labor. (Tr. 34). She said her son was born prematurely, but he is fine now.

Graves stated that her older son lives with her mother. She explained that she assigned parental supervision of her son to her mother, so that she can regain custody "no matter what." She said she lives with her mother now, as she always has. She stated that she lost custody of her younger son because of her drug use and that a court custody hearing was scheduled to occur in December 2008. Graves testified that her younger son lives with her cousin, who is a certified foster parent and a nurse. (Tr. 35). She said she sees her youngest son every week.

Plaintiff testified that she has been tested for drugs four times and has passed each time. She stated that, when she was going through rehabilitation at A.E.E.T., L.L.C. in Mandeville with Dr. Frazier Mosier, she was tested weekly or sometimes twice a week. She said that ICS may knock on her door at any time to administer a random drug test.

In response to questions by the ALJ, Graves did not recall having gone to the Riverside Medical Center emergency room on July 7, 2008, complaining that she had

fallen in the shower and hurt her back,[3] or having told hospital personnel on that date that she had drunk some beer. (Tr. 36). She stated that the last time she recalled going to the Riverside emergency room was for an earache because her son had hit her in the ear with a toy,[4] and that she had not fallen in the shower. (Tr. 37). She denied that she had ever consumed an entire beer, but said she took a drink of her brother's beer. She said she takes medications for her condition. (Tr. 38).

C.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 16-21). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

D.    Plaintiff's Appeal

1.    The ALJ did not violate Social Security Ruling 82-59 by rejecting plaintiff's eligibility for benefits because of her noncompliance with medical treatment without demonstrating that compliance is clearly expected to restore capacity to engage in substantial gainful activity.

---

[3]The emergency room medical records dated July 7, 2008 to which the ALJ referred did not mention falling in the shower. Plaintiff reported that she had fallen at home four days earlier and hit her head, and that she had been having lower back pain since then, which was worse when she urinated. (Tr. 346). She was diagnosed with a urinary tract infection. (Tr. 345).

[4]According to the medical records, this incident occurred on March 8, 2008. (Tr. 324-27).

2. The ALJ did not violate Social Security Ruling 82-59 by rejecting plaintiff's eligibility for benefits because of her noncompliance with medical treatment without first warning her that continued failure to follow prescribed treatment without good reason could result in denial of benefits.

The ALJ found at the fourth step of the sequential evaluation that plaintiff has severe impairments consisting of Crohn's disease and possible osteoporosis, but that she retains the residual functional capacity to perform the full range of medium work. Graves argues that the ALJ committed two legal errors at this step, based on the ALJ's finding that she was not always compliant with her treatment regimen for Crohn's disease. Because both assertions of error are based on Social Security Ruling 82-59, I address them together.

Graves contends in her memorandum that the ALJ made two factual errors in his summary of the medical evidence, but she does not rest her arguments on those alleged factual errors. She argues that the ALJ violated Social Security Ruling 82-59 by rejecting her eligibility for benefits because of her noncompliance with medical treatment (1) without demonstrating that compliance is clearly expected to restore capacity to engage in substantial gainful activity and (2) without first warning her that continued failure to follow prescribed treatment without good reason could result in denial of benefits.

Although Social Security Rulings "do not carry the force of law . . . , they are generally entitled to deference because they constitute the Social Security Administration's interpretations of its own regulations and the statute that it administers." Fagan v. Astrue, 231 F. App'x 835, 837 n.2 (10th Cir. 2007) (citing Walker v. Sec'y of Health & Human Servs., 943 F.2d 1257, 1259-60 (10th Cir. 1991)); accord Carnahan v. Apfel, 247 F.3d 241, 2001 WL 43543, at *4 n.1, *5 n.2 (5th Cir. Jan. 8, 2001) (citing B.B. ex. rel. A.L.B. v. Schweiker, 643 F.2d 1069, 1071 (5th Cir. 1981)). However, plaintiff's arguments are not supported by either the language of the ALJ's decision, Social Security Ruling 82-59 or the case law.

The ALJ recognized that plaintiff's Crohn's disease is a severe impairment. Crohn's disease is a "nonspecific chronic transmural inflammatory disease that most commonly affects the distal ileum and colon but may also occur in any part of the [gastrointestinal] tract." The Merck Manual of Diagnosis and Therapy 830 (Robert Berkow & Andrew J. Fletcher, eds., 16th ed. 1992). "Chronic diarrhea associated with abdominal pain, fever, anorexia, weight loss, and right lower quadrant mass or fullness are the most common presenting features." Id. at 831. "Established chronic [Crohn's disease] is characterized by lifelong exacerbations." Id. at 833.

Of course, the mere diagnosis of an impairment does not establish that a claimant is disabled. Martin v. Chater, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23,

1995) (citing <u>Anderson v. Sullivan</u>, 925 F.2d 220, 222 (7th Cir. 1991)); <u>accord</u> <u>Harris v. Barnhart</u>, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003); <u>Estok v. Apfel</u>, 152 F.3d 636, 640 (7th Cir. 1998); <u>Jones v. Sullivan</u>, 954 F.2d 125, 128 (3d Cir. 1991); <u>Hames v. Heckler</u>, 707 F.2d 162, 165 (5th Cir. 1983). Plaintiff "must show that she was so <u>functionally impaired</u> by her [diagnosed impairment] that she was precluded from engaging in any substantial gainful activity." <u>Id.</u> (emphasis added); <u>accord</u> <u>Anthony v. Sullivan</u>, 954 F.2d 289, 293 (5th Cir. 1992).

In Graves's case, her treating physicians noted on five occasions in her extensive medical records that she had been noncompliant with her medications: on August 30, 2006; September 4, 2007; November 4, 2007; December 19, 2007; and March 18, 2008. (Tr. 222, 287, 300, 313, 328-30). While she was pregnant, her treating obstetrician stated in the records of her multiple hospital admissions or emergency room visits that, on several occasions, she had failed to keep scheduled office appointments with him and to follow up with him and her treating gastroenterologist after her hospital visits. (Tr. 210, 211, 214). An emergency room physician noted on March 18, 2008 that plaintiff needed to establish herself with an internist as soon as possible, presumably to avoid multiple emergency room visits such as she had been making, including the visit that day when she had run out of medication two weeks earlier. (Tr. 330).

Graves argues, incorrectly, that the ALJ found that she was not disabled <u>because of</u> her noncompliance with her prescribed medical treatment and that the ALJ was required to follow the evidentiary and notice requirements of Social Security Ruling 82-59 before he could make such a finding. Plaintiff is incorrect first because the ALJ stated that, "<u>with medication non-compliance</u>, claimant is found to be capable of maintaining a wide range of full-time sustained work." (Tr. 21) (emphasis added). Thus, the ALJ found that Graves is not disabled even when she fails to take her prescribed medication and her disease is essentially untreated. Although he considered her noncompliance for other legitimate purposes, as discussed more fully below, he did <u>not</u> state that he found her not disabled <u>because of</u> her noncompliance with treatment.

Second, plaintiff's memorandum quotes a part of Social Security Ruling 82-59 out of context and fails to address the ruling in its entirety. In these circumstances, Social Security Ruling 82-59 does not apply, for the following reasons.

Social Security Ruling 82-59 states "the policy and describe[s] the criteria necessary for a finding of failure to follow prescribed treatment when evaluating disability under titles II and XVI of the Social Security Act and implementing regulations." Social Security Ruling 82-59, 1982 WL 31384, at *1 (1982) (citing 20 C.F.R. §§ 404.1530, 416.930). The Ruling applies to "individuals with a <u>disabling impairment</u> which is amenable to treatment that could be expected to restore their ability

to work." Id. (emphasis in original). Ruling 82-59 prescribes certain evidentiary and notice requirements (including the two cited by Graves that the ALJ did not follow) that the Commissioner must follow before denying benefits to an "individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work." Id. (emphasis added).

Thus, failure to comply with prescribed treatment becomes an issue for purposes of Social Security Ruling 82-59, and the Ruling applies, only if "(1). The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity . . . ; and (2). The impairment has lasted or is expected to last for 12 continuous months from onset of disability." In other words, the Ruling only applies if the claimant is disabled, as defined by the Commissioner's regulations, and the prescribed treatment could be expected to restore the claimant's ability to work.

The well-reasoned case law is consistent with this interpretation. Social Security Ruling 82-59 "explains the circumstances in which the Secretary may deny benefits to an otherwise disabled individual on the basis that the claimant has failed to follow . . . prescribed treatment" and "only applies to claimants who would otherwise be disabled within the meaning of the Act." Owen v. Astrue, 551 F.3d 792, 800 n.2 (8th Cir. 2008)

(citing <u>Holley v. Massanari</u>, 253 F.3d 1088, 1092 (8th Cir. 2001)); <u>see also</u> <u>Vega v.</u> <u>Comm'r of Soc. Sec.</u>, 358 F. App'x 372, 375 (3d Cir. 2009) ("It is also true that a denial of benefits for failure to follow a prescribed treatment plan may only be issued <u>after the</u> <u>ALJ finds a disabling impairment</u> that precludes engaging in any substantial activity, SSR 82-59, a finding that the ALJ did not make here.") (emphasis added).

The Eighth Circuit in <u>Owen</u> rejected the plaintiff's argument that the ALJ had violated Social Security Ruling 82-59 by taking into account plaintiff's noncompliance with treatment and medication instructions. The appeals court held that the Ruling did not apply because "the ALJ considered Owen's noncompliance for purposes of determining the weight to give [his treating physician's] medical opinions," and not as the basis for finding that plaintiff was not disabled. <u>Owen</u>, 551 F.3d at 800 n.2; <u>see also</u> <u>Wildman v. Astrue</u>, 596 F.3d 959, 964 (8th Cir. 2010) (citing <u>Owen</u>, 551 F.3d at 800; <u>Brown v. Barnhart</u>, 390 F.3d 535, 540 (8th Cir. 2004)) ("[T]he ALJ did not err in discounting [a treating doctor's] opinion because it was conclusory and failed to account for [plaintiff's] unjustified noncompliance" with treatment.). In the instant case, the ALJ similarly and properly discounted the opinion of plaintiff's treating physician, Dr. Purnachandra R. Yerneni, regarding the frequency and severity of her Crohn's disease symptoms, in part because Dr. Yerneni failed to take into account her noncompliance with her medication. (Tr. 20).

Thus, Social Security Ruling 82-59 "does not restrict the use of evidence of noncompliance for the disability hearing," <u>Holley</u>, 253 F.3d at 1092, either to assess the weight of a doctor's opinion, as the ALJ did in <u>Owen</u>, or to assess the claimant's credibility.  Just as in <u>Holley</u>, the ALJ in the instant case also

> analyzed the evidence of [plaintiff's] noncompliance within the context of his analysis of [plaintiff's] credibility.  <u>The ALJ never determined that [plaintiff] was disabled and that compliance would restore [plaintiff's] ability to work.  By contrast, the ALJ determined that in spite of [plaintiff's] noncompliance, [plaintiff] was not disabled</u>.  The ALJ used the evidence of [plaintiff's] noncompliance solely to weigh the credibility of [plaintiff's] subjective claims of pain.  Social Security Ruling 82-59 does not restrict the use of evidence of noncompliance, it merely delineates the reasons that the Social Security Administration may deny benefits to an <u>otherwise disabled person</u> because they fail to comply with their doctor's prescribed treatment.  Therefore, Social Security Ruling 82-59 does not apply to this case.

<u>Id.</u> (emphasis added); <u>see also</u> <u>Vega</u>, 358 F. App'x at 375 (citation omitted)

> ("[I]t was not Vega's noncompliance with her treatment that was the basis for the denial of benefits; rather, it was her residual functional capacity to return to sedentary work.  Viewed in the context of the ALJ's findings as a whole, his reference to Vega's noncompliance shows that he treated it as a factor in analyzing the credibility of Vega's testimony.  Because an ALJ may consider a claimant less credible if the individual fails to follow the

prescribed treatment plan without good reason, see SSR 96-7p,[5] this was not improper.").

In the instant case, the ALJ took plaintiff's noncompliance with medications into account in assessing the credibility of her complaints of disabling frequency and severity of symptoms. He found her "assertions relative to symptomatology, pain, functional limitations and restrictions on activities of daily living are not credible in that they are exaggerated, lack corroboration or substantiation in the medical evidence, and are at least partially the result of her failure to follow prescribed medical treatment." (Tr. 21). It is well established in the Fifth Circuit that a plaintiff's lack of need for medication or failure to seek treatment is a relevant factor to consider in determining the severity of an impairment and may be used in conjunction with the medical reports to discount plaintiff's complaints of disabling pain or other limitations. Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Anthony, 954 F.2d at 295; Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990).

Importantly, the ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions

---

[5]Social Security Ruling 96-7p "explain[s] the factors to be considered in assessing the credibility of the individual's statements about symptoms" and provides that "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." Social Sec. Ruling 96-7p, 1996 WL 374186, at *1, *7 (July 2, 1996).

are 'precisely the kinds of determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). Thus, the ALJ's evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 Fed. Appx. 176, 181 (5th Cir. 2009); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007); Falco v. Shalala, 27 F.3d 160, 164 & n.18 (5th Cir. 1994). The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that is required. Id. at 163-64; Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999) (Vance, J.); accord James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 164).

In this case, the ALJ explained at length why Graves's subjective symptoms and alleged limitations were not credible and were inconsistent with the clinical and objective findings, including her repeated failures to comply with her medication regimen and to follow up with her treating physicians after her hospital admissions and emergency room visits. See Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *2 (5th Cir. Apr. 5, 2001) (citing 20 C.F.R. §§ 404.1530, 416.930; Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991)) (Substantial evidence supported the ALJ's credibility determination, given his findings that plaintiff exaggerated his symptoms and failed to follow his prescribed treatment regimen.); Austin v. Apfel, 205 F.3d 1338, 1999 WL 1338401, at *1 (5th Cir. 1999) (citing Griego, 940 F.2d at 945) ("The ALJ did not err in failing to credit Austin's

subjective complaints of pain as those complaints were contradicted by medical reports and by Austin's decision to forego pain medications, corrective surgery, and ongoing treatment.").

Dr. Yerneni provided a checklist form dated March 5, 2008 in which he opined, by checking "yes" or "no" in response to preprinted questions, that Graves has certain severe symptoms of Crohn's disease and is incapable either of standing and/or walking or sitting for six hours in an eight-hour day or of alternately sitting and standing for eight hours without walking or reclining. (Tr. 339-40). The ALJ found these opinions not credible for a variety of reasons. Notably, Dr. Yerneni did not write anything in the space for "Remarks." Dr. Yerneni relied in his checklist opinion form on plaintiff's own reports of symptoms and limitations, which were not corroborated by, or were inconsistent with, the clinical and objective findings in the medical records. Dr. Yerneni also failed to take into account plaintiff's noncompliance with her medications.

> The ALJ has sole responsibility for determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

Newton, 209 F.3d at 455-56 (quotations and citations omitted).

The generality and incompleteness of checklist form opinions make them weak evidence, particularly when they are unsupported by or inconsistent with the medical records.  Larson v. Astrue, No. 09-4037, 2010 WL 3001209, at *7 (7th Cir. Aug. 3, 2010); Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993); Peck v. Barnhart, 214 F. App'x 730, 738 (10th Cir. 2006) (citing  Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987).

This court is not the finder of fact in the first instance in this case.  Whether this court might have weighed the evidence differently is of no moment.  Substantial evidence in the record supports the ALJ's decision not to credit the checklist opinions of Dr. Yerneni or plaintiff's own subjective complaints, based in part on her noncompliance with her treatment regimen.  That is all that is required.  Accordingly, plaintiff's assignments of error lack merit.

CONCLUSION

The ALJ did not violate Social Security Ruling 82-59.  His assessments of plaintiff's credibility and residual functional capacity are supported by substantial evidence.

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[6]

New Orleans, Louisiana, this ___13th___ day of August, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[6]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.